# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:13-CV-083-RLV-DCK

| | |
|---|---|
| 3A COMPOSITES USA, INC., a Missouri Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **ORDER** ) |
| UNITED INDUSTRIES, INC., an Arkansas Corporation, and WESLEY PAULIN, | ) ) ) ) |
| Defendants. | ) ) ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Joint Motion To Transfer Venue" (Document No. 18). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and the pending motion is ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will grant the motion to transfer.

## I. BACKGROUND

3A Composites USA, Inc. ("Plaintiff" or "3A") filed its "Complaint" (Document No. 1) in this action on May 31, 2013. The Complaint asserts causes of actions against United Industries, Inc. ("United") and/or Wesley Paulin ("Paulin") (together, "Defendants") for: (1) breach of contract against Paulin; (2) tortious interference with contract against United; (3) misappropriation of trade secrets against United and Paulin; (4) violation of unfair and deceptive trade practices act ("UDTPA") against United and Paulin; and (5) preliminary and permanent injunctive relief. (Document No. 1, pp.8-12). Defendants' Answers to the Complaint were filed on July 9, 2013. (Document Nos. 15, 17).

The pending "Defendants' Joint Motion To Transfer Venue" (Document No. 18) was also filed on July 9, 2013. Plaintiff's "Brief In Opposition To Defendants' Motion To Transfer Venue" (Document No. 22) was filed on July 26, 2013. On August 8, 2013, the Court entered its "Pretrial Order And Case Management Plan" (Document No. 23). "Defendants' Reply Brief In Support Of Motion To Transfer Venue" (Document No. 25) was filed on August 16, 2013. As such, the pending motion to transfer is now ripe for disposition.

## II. DISCUSSION

Defendants move to transfer this action to the United States District Court for the Western District of Arkansas, or alternatively, to the United States District Court for the Western District of Missouri, pursuant to 28 U.S.C. § 1404(a). (Document No. 19, pp.2-3). Defendants acknowledge that North Carolina has subject matter and personal jurisdiction over all parties, but argue that venue "in North Carolina is improper because neither of the Defendants nor any substantial part of the subject matter of this action is situated in North Carolina." (Document No. 18, p.1).

Defendants contend that this "action arises out of two separate agreements between the parties executed on different dates and in different contexts." (Document No. 19, p.1). Defendant United and Plaintiff's predecessor, Alcan Composites USA, Inc. ("Alcan"), purportedly entered into a "Secrecy Agreement" on or about May 29, 2007, by which United agreed to "maintain secret and confidential certain information as part of an evaluation to determine the suitability of new Alcan" products for use as a component of "United's substrate products." (Document No. 1, p.3; Document No. 19, p.1); see also, (Document No. 1-1). Defendants note that the Secrecy Agreement contains a provision that it "shall be governed,

2

construed, and interpreted according to the laws of the State of Missouri and its courts shall have jurisdiction." (Document No. 19, p.2) (citing Document No. 1-1, p.4).

On or about October 6, 2003, Defendant Paulin executed an "Alcan Composites USA Inc. Employee Agreement" (the "Confidentiality Agreement"). (Document No. 1, pp.3-5); (Document No. 19, pp.1-2); see also, (Document No. 1-2). In the Confidentiality Agreement, Paulin acknowledged that he would have access to confidential information as an employee of Alcan/3A, agreed to maintain the confidentiality of certain information, and "agreed that ideas, know-how or inventions he conceived related to 3A's business 'would remain the sole and exclusive property of [3A], its nominees and affiliates.'" (Document No. 1, pp.4-5) (citing Document No. 1-2, p.2); see also, (Document No. 19, p.2). Defendants note that the Confidentiality Agreement states that the "validity, interpretation, and performance hereunder shall be determined and governed by the laws of the State of Missouri." (Document No. 19, p.2) (citing Document No. 1-2, p.4).

Defendants assert that venue in Arkansas is proper because: both the Defendants are residents of the Western District of Arkansas; a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Arkansas; and a substantial part of the property that is the subject of the action is situated in the Western District of Arkansas. (Document No. 18, p.2; Document No. 19, pp.4-6) (citing 28 U.S.C. § 1391).

Under 28 U.S.C. § 1391(b), venue is proper in: (1) a judicial district in which a defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) any

judicial district in which any defendant is subject to the court's personal jurisdiction. Defendants specifically aver that venue in North Carolina is improper based on the following:

> the Plaintiff's Complaint reveals that 3A assigns fault to both United and Paulin for trade secret/confidentiality violations related to the manufacture of a specific type of extruded polystyrene foam sheet. If this happened at all, which is denied, by Plaintiff's own allegations, it happened in Arkansas at United's facility where Paulin was hired to work. The facility is located in Bentonville, Arkansas, which is in the Western District of Arkansas. If Paulin breached the Confidentiality Agreement, which is denied, by Plaintiff's own allegations he did so once he began work for United in Arkansas in 2013. If United breached the Secrecy Agreement, which is denied, by Plaintiff's own allegations it did so by setting up a new manufacturing line at its plant in Arkansas in 2012 and 2013. If United tortiously interfered by hiring Paulin or somehow induced him to breach the Confidentiality Agreement, which is denied, by Plaintiff's own allegations, that likewise happened in Arkansas. If any of the Defendants misappropriated trade secrets, which is again denied, by Plaintiff's allegations such acts would have only occurred in Arkansas. Finally, if United's actions also constitute unfair and deceptive trade which is again denied, those practices would have only occurred in Arkansas. Without United's hiring of Paulin and its attempt to manufacture its own polystyrene foam product in Arkansas, Plaintiff has no claim under any of its various theories of recovery.

(Document No. 19, pp.4-5).

In the alternative, Defendants contend that the forum-selection clause and choice-of-law provisions in the agreements discussed above favor venue in Missouri. (Document No. 18, p.2; Document No. 19, pp.7-9). They further contend that the "entire lawsuit" is premised upon the Secrecy Agreement and the Confidentiality Agreement. (Document No. 19, p.8). Defendants acknowledge that neither of the jurisdictional/choice-of-law provisions "makes specific mention of venue," but argue that the "combination jurisdictional/choice-of-law clause of the Secrecy Agreement *strongly suggests* Missouri venue." (Document No. 19, pp.8-9) (emphasis added). Defendants then note that "[o]n balance the Secrecy Agreement seems to be a permissive forum-

4

selection clause," as opposed to a mandatory forum selection clause. (Document No. 19, p.9, n.2).

> A mandatory forum selection clause provides the designated forum with exclusive jurisdiction over any disputes while a permissive clause provides a designated forum jurisdiction, but not necessarily exclusive jurisdiction. . . . Generally, a forum selection clause "will not be enforced as a mandatory selection clause without some further language that indicates the parties' intent to make jurisdiction exclusive."

Giammattei v. Bertram Yacht, Inc., 3:09-CV-399-RLV, 2010 WL 2593612 at *5 (W.D.N.C. June 23, 2010) (citations omitted).

Plaintiff asserts that the Complaint is based upon Defendant Paulin's employment with 3A in Statesville, N.C., and his Confidentiality Agreement. (Document No. 22, p1). Plaintiff further asserts that the Secrecy Agreement with United is not at issue; rather, the Secrecy Agreement "provide[s] factual background about what United acknowledged were 3A's confidential and/or trade secret information." (Document No. 22, pp.1,3).

In addition, Plaintiff argues that a substantial portion of the events giving rise to Plaintiff's claims occurred in North Carolina, and therefore, venue is proper here. (Document No. 22, pp.4-5) (citing 28 U.S.C. § 1391). Plaintiff specifically summarizes these events as follows:

> . . . Mr. Paulin was based out of 3A's Statesville, North Carolina headquarters at all times relevant to the development of 3A's GA Block Foam Product and its manufacturing process. Mr. Paulin thus learned of the confidential information and trade secrets at issue in this case while working in the Western District. Mr. Paulin also learned of this information using 3A's IT infrastructure in Statesville, North Carolina. Finally, because 3A's principal place of business is in Statesville where its GA Block Foam product is incorporated into final product form for sale to customers, such as United, 3A's injury from Mr. Paulin's misappropriation is felt in the Western District. Mr. Paulin's sustained activity in the Western District while working for 3A

> confirms that a substantial part of the events giving rise to its claim occurred in North Carolina, and thus North Carolina is a proper venue for this action. This is so even though the GA manufacturing process was installed and implemented in Kentucky because Paulin was based in North Carolina and the benefits of the innovations flowed directly to 3A's headquarters in North Carolina.

(Document No. 22, pp.5-6) (internal citations omitted). Plaintiff contends that "[i]n assessing where a 'substantial part of the events occurred,' a 'court should not focus only on those matters that are in dispute or that directly led to the filing of the action.'" (Document No. 22, p.4) (quoting Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004).

The undersigned observes that Mitrano also holds that "it is possible for venue to be proper in more than one judicial district." Mitrano, 377 F.3d at 405; see also, American Auto. Ins. Co. v. Jacobs, 2012 WL 5185617 at *6 (W.D.N.C. Sept. 27, 2012). "Thus, the court does not consider whether the current venue is the 'best venue.' Rather, the court determines if there is a substantial connection between the venue and the plaintiff's claim." Miller v. 3M Co., 2013 WL 4419351 at *2 (E.D.N.C. August 14, 2013) (citing Setco Enters. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994). After careful consideration of the parties' arguments, the undersigned is satisfied that venue in this case is likely proper in North Carolina or Arkansas. As such, the undersigned will make a determination regarding the pending motion pursuant to 28 U.S.C. § 1404(a).

According to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Under the provisions of either § 1404(a) or § 1406(a), the district court has broad discretion to grant or deny a motion to transfer to another district." Landers v. Dawson Const. Plant, Ltd., 201 F.3d 436, 1999 WL 991419 at *2 (4th Cir. Nov. 2, 1999).

6

"When faced with motions to transfer, district courts must engage in an analysis of convenience and fairness, weighing a number of case-specific factors." Id. (citing Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). The Supreme Court opined in Stewart that

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors.

Stewart, 487 U.S. at 29 (1988) (internal citation omitted).

This Court, as well as other U.S. District Courts applying Stewart, have considered eleven factors in the analysis of whether to transfer a case to another venue. These factors include:

1. The plaintiff's initial choice of forum;

2. The residence of the parties;

3. The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view;

6. The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

Giammattei, 2010 WL 2593612 at *2-3 (W.D.N.C. June 23, 2010) (citing Scholl v. Sagon RV Supercenter, LLC, 249 F.R.D. 230, 239 (W.D.N.C. 2008) and McDevitt & Street Co. v. Fide. and Deposit Co., 737 F.Supp. 351, 354 (W.D.N.C. 1990)); see also, St. Paul Fire & Marine Ins. Co. v. Renne Acquisitions Corp., 3:09cv511-RJC-DCK, 2010 WL 2465543 at *3 (W.D.N.C. June 14, 2010). "Generally, the movant carries a 'heavy burden' in establishing that a case should be transferred pursuant to 28 U.S.C. § 1404(a)." Giammattei, 2010 WL 2593612 at *3 (quoting Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93, 95 (W.D.N.C.1991). "Because of the plaintiff's initial right to choose the forum, a court should refrain from transferring an action if the transfer merely would shift the inconvenience from one party to another." Commercial Equip. Co. v. Barclay Furniture Co., 738 F.Supp. 974, 976 (W.D.N.C. 1990). The analysis of the factors listed above is qualitative, not merely quantitative. Id. The Court will discuss these factors in turn.

### 1. Plaintiff's Choice of Forum

> In this district, it is well settled that where the plaintiff has chosen the forum where he resides, transfer to another venue should be allowed only "where the interests of justice weigh heavily in favor of transfer to another district." Nutrition & Fitness, Inc., 264 F.Supp.2d at 362. Where transferring venue would do little more than shift the balance of inconvenience from one party to another, the plaintiff's choice of forum is determinative.

Poarch v. American General Financial Services, Inc., 3:06CV412-RJC, 2007 WL 274807 at *4 (W.D.N.C. January 25, 2007) (citations omitted).

"While the plaintiff's choice of forum is accorded substantial weight, the deference given to the plaintiff's choice is proportionate to the relation between the forum and the cause of action." Parham v. Weave Corp., 323 F.Supp.2d 670, 674 (M.D.N.C. 2004) (citations omitted).

This Court has noted that "[w]hile Plaintiff's choice of forum is ordinarily accorded considerable weight, that weight is diminished when the conduct giving rise to the complaint did not occur in the forum." Hames v. Morton Salt, Inc., 3:11CV570-MOC-DSC, 2012 WL 1247201 at *2 (W.D.N.C. Apr. 13, 2012); see also, Union First Market Bank v. Bly, 3:13-cv-316-GCM, 2013 WL 4455619 at *2 (W.D.N.C. Aug. 16, 2013).

As noted above, Defendants persuasively argue that most, if not all, of the conduct giving rise to the Complaint occurred in Arkansas. (Document No. 19, pp.4-5). In fact, the Complaint acknowledges that "this action **arises out of Defendant's conduct** in using 3A's proprietary, confidential and trade secret information **outside of North Carolina** to create a competitor product. (Document No. 1, p.2) (emphasis added). Defendants also assert that "the GA manufacturing process" at issue here "was installed and implemented in Kentucky." (Document No. 25, p.1). Moreover, it appears that the allegations in the Complaint focus on Defendants' actions in 2012-2013, several years after Paulin left Plaintiff's employment, and during a time when it appears undisputed that both Defendants were in Arkansas. (Document No. 1; Document No. 19, pp.4-5).

The undersigned observes, however, that Defendants argue that this first factor favors venue in Missouri based on the forum-selection clause in the Secrecy Agreement. (Document No. 19, p.10). The undersigned is not convinced that the permissive forum-selection clause of an agreement that is indirectly related to the claims in the lawsuit supports transfer to Missouri − a state where no party resides, and none of the conduct giving rise to the Complaint is alleged to have occurred.

Under the circumstances, Plaintiff's choice of forum is accorded diminished weight.

**2. Residence of the Parties**

Plaintiff "is a corporation organized and existing under the laws of the State of Missouri," with a principal place of business in Statesville, North Carolina. (Document No. 1, p.1). "United is a corporation organized and existing under the laws of the State of Arkansas," with a principal place of business in Bentonville, Arkansas. Id. Paulin is a resident of Bentonville, Arkansas and a current employee of United. (Document No. 1, p.2).

The undersigned finds this factor to be neutral.

### 3. Relative Ease of Access to Proof

Defendants argue that this factor weighs heavily in favor of transfer to the Western District of Arkansas. (Document No. 19, pp.10-11). Specifically, Defendants contend that

> most of the potential sources of evidence, including witnesses, physical evidence and documentary material, are in Arkansas. This case centers on the recent actions of Wes Paulin and his new employer, both of which are in Bentonville, Arkansas. The critical witnesses will be Paulin, John Ferm (President of United), Kent Ferm (Vice President of United) and perhaps Stephen Lindsey (plant manager of the United facility in Arkansas). Another critical witness will likely be Ed Leduc, who resides in Wisconsin. Without question, the key physical evidence will be determining exactly what United is doing with new manufacturing equipment within its Arkansas facility and what kind of product is being produced there. See Affidavit of John Ferm attached as Exhibit 1. Documentary evidence should be roughly equally available.

Id.

Plaintiff acknowledges that "while certain United employees are likely to be critical witnesses, so too are certain 3A employees." (Document No. 22, p.10). Plaintiff argues that "3A has all evidence of information Mr. Paulin acquired during his work at 3A, and thus what information is included in the confidential and/or trade secret information that Mr. Paulin misappropriated. Id. However, Plaintiff seems to agree that documentary evidence should be equally available, and should be a minor factor.

This factor appears to slightly favor venue in Arkansas.

**4. Availability of Witnesses**

Although Defendants contend that critical witnesses are in Arkansas, as well as Wisconsin, which is purportedly 300 miles closer to Arkansas than North Carolina, they somehow conclude that this factor favors transfer to Missouri. (Document No. 19, p.11).

Plaintiff contends that under this factor "transfer would merely shift the inconvenience from the defendant to plaintiff," and therefore, "the court should not disturb the Plaintiff's choice of forum." (Document No. 22, p.11) (citing Dominion Square-Culpepper, LLC v. KB Toys Retail, Inc., 3:08-CV-179-DCK, 2008 WL 2945448 at *3 (W.D.N.C. July 24, 2008). Plaintiff further contends that Ed LeDuc ("LeDuc"), of Wisconsin, is the only witness who is not a party or an officer of either party, and that he is not more subject to compulsory process in Arkansas or Missouri than he is in North Carolina. Id.

The undersigned does not find either party's brief particularly helpful on this issue. Defendants' reliance on the jurisdictional and/or choice-of-law provisions is misplaced here. Missouri law can be applied in Arkansas and North Carolina, and as noted above the undersigned does not find that the permissive forum selection clause in the Secrecy Agreement compels transfer to Missouri, especially when few, if any, other factors support venue in Missouri. Plaintiff's brief fails to identify *any* witness other than LeDuc.

On balance, the Court will construe this factor as slightly favoring Defendants.

**5. Possibility of a View**

The parties agree that it is unlikely that a view will be necessary in this case. (Document No. 19, p.12; document No. 22, p.11-12). If a view is required, it appears more likely to be in

Arkansas where Defendants wrongdoing is alleged to have occurred. Thus, this factor slightly favors transfer to Arkansas.

### 6. Enforceability of Judgment, if Obtained

Neither party has raised a concern that a judgment is more likely to be enforceable in one forum rather than the other. This factor is neutral.

### 7. Relative Advantages and Obstacles to a Fair Trial

No arguments have been made that there are advantages or obstacles to a fair trial in Arkansas, North Carolina, or Missouri. This factor is neutral.

### 8. Other Practical Problems

The undersigned does not find that practical problems have been identified that favor either forum. This factor is neutral.

### 9. Administrative Difficulties of Court Congestion

Plaintiff persuasively notes that the total filings per judgeship, and the pending cases per judgeship are greater in the Western Districts of Arkansas and Missouri than in the Western District of North Carolina. (Document No. 22, p.12); see also (Document No. 18-1). Based on the information presented, this factor favors denial of the transfer, but only marginally.

### 10. Interest in Localized Controversies Settled at Home

This case relates to injuries allegedly sustained in North Carolina, based on events occurring in Arkansas, and will likely involve the interpretation of Missouri law. Under the circumstances, this factor is neutral and the Court attaches no weight to it.

### 11. Avoidance of Unnecessary Problems with Conflicts of Laws

The undersigned is not persuaded that an unnecessary problem with conflicts of laws would be created by transfer, and thus finds this factor neutral.

## III. CONCLUSION

While the motion presents a relatively close question, the undersigned finds that transfer of this matter to the Western District of Arkansas is appropriate. Although many of the factors are either neutral or only give slight weight to one court over another, the undersigned will order that this matter be transferred.

**IT IS, THEREFORE, ORDERED** that "Defendants' Joint Motion To Transfer Venue" (Document No. 18) is **GRANTED**. This matter shall be transferred to the United States District Court for the Western District of Arkansas.

**SO ORDERED**.

Signed: October 4, 2013

David C. Keesler
United States Magistrate Judge